USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:    3/26/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SHANITRA LOCKETT,

                                    Plaintiff,

-against-

CITY OF MOUNT VERNON,

                                    Defendant.

---

7:23 CV 9138 (NSR)

**OPINION & ORDER**

---

NELSON S. ROMÁN, United States District Judge:

Plaintiff Shanitra Lockett ("Plaintiff" or "Ms. Lockett") brings this action against the City of Mount Vernon ("Defendant" or the "City"), her former employer, alleging discrimination and a hostile work environment on the basis of sex and pregnancy in violation of the New York State Human Rights Law, N.Y. Exec. Law § 296(1) ("NYSHRL") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 200e *et seq* ("Title VII"). (*See* Complaint, ECF No. 1.)  The Complaint further alleges that Defendant retaliated against her in violation of the NYSHRL, Title VII, and the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq* ("FMLA").[1] (*Id.*) Defendant moved for summary judgment. For the reasons that follow, Defendant's motion is GRANTED.

---

[1] In its Opposition, Plaintiff explicitly withdrew her Title VII hostile work environment claim. (Pl. Opp. at 15 n.7.) This withdrawal seems to extend to any disparate treatment allegations under Title VII, as Plaintiff only addressed the NYSHRL in its response. (*See id.* at 15-18.) Accordingly, this Court will address only the remaining discrimination and hostile work environment claims under the NYSHRL and claims for retaliation. *See Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003), *order clarified*, No. 01-CV-5750 (ILG), 2003 WL 21781941 (E.D.N.Y. July 29, 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way."); *see also Douglas v. Victor Capital Group,* 21 F.Supp.2d 379, 393 (S.D.N.Y.1998) (collecting cases).

**FACTUAL BACKGROUND**[2]

Plaintiff is a former Assistant Corporation Counsel who was employed by the City from August 10, 2020 until her termination on July 6, 2022. (Def. 56.1 ¶¶ 1, 162.) Brian G. Johnson ("Mr. Johnson") was, at all times relevant to Plaintiff's Complaint, the Corporation Counsel for the City and Plaintiff's supervisor. (*Id.* ¶¶ 3, 14.) As Assistant Corporation Counsel, Plaintiff was responsible for attending meetings of several City boards, drafting resolutions and findings of fact, researching land use issues, and assisting with additional tasks as required by the Corporation Counsel. (*Id.* ¶ 13.)

**Leak to Cuddy & Feder, LLP**

Prior to her employment with the City, Ms. Lockett worked as an associate attorney at Cuddy & Feder, LLP. (*Id.* ¶ 18.) At some point, the City Clerk's office became aware that Cuddy & Feder had obtained a copy of a draft City Council agenda before it had been finalized and approved for release. (*Id.* ¶ 19.) As the Clerk's office was investigating how Cuddy & Feder had procured a copy of the draft agenda, Brenda Gears ("Ms. Gears"), a long-time legal secretary in the Law Department, informed Kimberly Joshua ("Ms. Joshua") from the Clerk's office that Ms. Lockett had asked to see the agenda, and that she had given it to her. (*Id.* ¶ 20.) Ms. Gears and Ms. Joshua believed that "maybe" Ms. Lockett had leaked the document. (*Id.* ¶ 21.) During her deposition, Mayor Patterson-Howard (the "Mayor") testified that she had been told (by an unidentified individual) that Ms. Lockett had improperly shared a non-public document with her former employer and that she was concerned by this and questioned whether Ms. Lockett was

---

[2] In an effort to organize the factual background, the facts will be organized by relevant subsections. Unless otherwise noted, a standalone citation to Defendant's 56.1 Statement or Plaintiff's Counterstatement denotes that this Court has deemed the underlying factual allegation undisputed. Any citations to Defendant's 56.1 Statement or Plaintiff's Counterstatement incorporates by reference the documents cited therein. Where relevant, however, the Court may cite directly to underlying documents.

"working for the city or … for her former employer." (*Id.* ¶ 23.) The Mayor raised the issue with Mr. Johnson, who did not address the issue with Ms. Lockett at the time because his "department was understaffed, Plaintiff appeared to be competent at her job, and [he] had no reason to believe that she would have engaged in any form of dishonest conduct." (Pl. 56.1 Opp. ¶ 24; Def. Ex. 3 ¶ 6.)

**Janee Bedford's Hiring**

On May 3, 2021, the City hired Janee Bedford ("Ms. Bedford") as Assistant Corporation Counsel. (Def. 56.1 ¶ 25.) Soon after her hiring, various members of the Law Department, including Mr. Johnson, expressed dissatisfaction with Ms. Bedford's work product. On August 17, 2021, in preparation for a meeting the next day, Mr. Johnson e-mailed Ms. Bedford to express his concerns regarding her work performance. (*Id.* ¶ 27.) On or about August 18, 2021, Mr. Johnson met with Ms. Bedford and was considering terminating her employment. (*Id.* ¶ 28.) The Parties dispute whether Ms. Bedford informed Mr. Johnson for the first time that she was pregnant during this meeting or sometime in June 2021. (Pl. 56.1 Opp. ¶ 29.)

**Ms. Lockett's Pregnancy**

On or about July 21, 2021, Ms. Lockett informed Mr. Johnson that she was pregnant and her due date was December 6, 2021. (Def. 56.1 ¶ 30.) Ms. Lockett did not request leave at that time, and Mr. Johnson expected her to work with the City's Human Resources Commissioner, Holly Francis-Merritt ("Ms. Francis-Merritt"), to determine what leave she was entitled to take. (*Id.* ¶ 31.)

**First Relevant Comp Time Request from Ms. Lockett**

On or about August 5, 2021, Ms. Lockett submitted her comp time request for July 2021, which included an entry requesting comp time for "Memo drafting re: State of emergency 4:30 –

6:00pm." (*Id.* ¶ 32.) On September 17, 2021, Mr. Johnson e-mailed Ms. Lockett that he was not approving her July and August comp time requests because they were "not in line with [his] intentions for granting of compensation time." (*Id.* ¶ 33.) He reminded Ms. Lockett that comp time was intended for "extraordinary time spent working" and that it was "never [his] intention to grant quid pro quo time off." (*Id.*) In a verbal conversation, Mr. Johnson indicated that he took issue with the memo drafting entry, and told Ms. Lockett that he would not grant comp time on a "quid pro quo" or "hour for hour" basis and to revise her requests for resubmission. (*Id.* ¶ 34.) Ms. Lockett responded that Mr. Johnson had granted comp time for similar requests in the past and that she did not understand why her recent requests were being treated differently. (Pl. Ex. C ¶ 42.) Mr. Johnson also asked Plaintiff to research whether a municipality providing compensatory time to exempt employees was legally impermissible due to "double dipping," and Ms. Lockett provided the requested research on October 4, 2021. (Pl. 56.1 Opp. ¶ 37; Pl. Ex. G.)

On September 23, 2021, Ms. Lockett resubmitted her requests for compensatory overtime work performed in July and August and Mr. Johnson approved her requests on September 28, 2021. (Pl. Ex. C ¶ 43; Pl. Ex. G.)

**September 29, 2021 City Council Meeting and Subsequent Investigation**

On September 28, 2021, Plaintiff received an invite to attend a City Council meeting scheduled for the next day. (Def. 56.1 ¶ 38.) Mr. Johnson instructed her to attend the meeting to "see if any of the issues pertained to [her]." (*Id.* ¶ 39.) Plaintiff attended the meeting on the 29th via Zoom from her office, with her camera covered so that she did not appear on screen. (*Id.* ¶ 40.) Mr. Johnson and Ms. Bedford attended the meeting in person. (*Id.* ¶ 41.)

At some point, the Council entered executive session and Mr. Johnson asked Ms. Bedford to leave the meeting. (*Id.* ¶ 42; Pl. 56.1 Opp. ¶ 43.) The Parties dispute whether Mr. Johnson asked

everyone other than the elected officials, and not just Ms. Bedford, to leave the meeting so that they could confidentially discuss the planned reorganization of the Law Department. (Pl. 56.1 Opp. ¶ 43.) After a discussion which lasted almost an hour, the previously dismissed attendees returned to the meeting, and the City Clerk notified Mr. Johnson and the Council that Ms. Lockett was still logged into the meeting. (Def. 56.1 ¶¶ 44-45; Pl. 56.1 Opp. ¶ 45.). The Parties dispute that Mr. Johnson was not aware Ms. Lockett had been logged into the meeting the entire time. (Pl. 56.1 Opp. 45.)

After she returned to the meeting, Ms. Bedford exchanged text messages with Ms. Lockett about whether Ms. Lockett's screen was visible from the council chambers, among other things. (Def. 56.1 ¶ 46; Def. Ex. 17.)

After the meeting, Mr. Johnson asked Ms. Lockett if she had been on the meeting the whole time and she confirmed that she had and that she had started drafting a memorandum that she had heard one of the Council members request during the executive session about the reorganization. (Def. 56.1 ¶¶ 51-52.)

The following day, on September 30, Mr. Johnson received reports from City employees that, when Ms. Bedford left the Council meeting, she went into Ms. Lockett's office where they overheard his conversation with the Council regarding the reorganization which was meant to be confidential. (*Id.* ¶¶ 53-54.) Mr. Johnson asked Ms. Lockett if someone else was in her office during the executive session. (*Id.* ¶ 55.) Plaintiff answered "yes," but did not elaborate. (*Id.* ¶ 56.) Mr. Johnson also asked Ms. Bedford if she had listened to the executive session from the Law Department, which she denied. (*Id.* ¶¶ 57, 59.) On October 1, 2021, Mr. Johnson sent a follow-up email to Ms. Lockett asking her to "confirm or deny whether Janee came into your office after being excused from the City Council Chambers to listen to the executive session." (*Id.* ¶¶ 60-61.)

At the suggestion of City staff, Mr. Johnson viewed surveillance video of the Law Department which showed that when Ms. Bedford was dismissed from the Council meeting she went into Ms. Lockett's office for the remainder of the discussion on the reorganization of the Law Department. (Def. Ex. 4. at 74-76.) The Parties dispute whether the contents of what was being said at the meeting, including Mr. Johnson's directive dismissing everyone except for the elected officials, could actually be heard by Ms. Lockett. Ms. Lockett maintains that at one point the microphone was not being passed around the speakers and thus the audio was in and out and she was able to hear only bits and pieces of the meeting. (Def. 56.1 ¶ 63; Pl. 56.1 Opp. ¶ 63.)

On October 4, 2021, Mr. Johnson separately e-mailed Ms. Lockett and Ms. Bedford notice of an impending investigation into the executive session incident on September 29, 2021 and directed them not to discuss the matter. (Def. 56.1 ¶¶ 65-66.) Mr. Johnson also requested that Ms. Lockett answer his earlier e-mail from October 1, 2021. (*Id.* ¶ 66.) Ms. Lockett did not respond in writing to Mr. Johnson's question about Ms. Bedford's presence in her office, and instead asked to "clarify" the matter in person. (*Id.* ¶¶ 67-69.) On October 6, 2021, Mr. Johnson did not attend Ms. Lockett's office birthday party. (*Id.* ¶ 73.)

After viewing the tape, Mr. Johnson requested an investigation into Ms. Lockett and Ms. Bedford's actions during the September 29, 2021 Council meeting, stating that he viewed the alleged actions as "a serious breach of trust and an act of dishonesty." (*Id.* ¶¶ 64, 78.) On October 20, 2021, Mr. Johnson notified Ms. Lockett and Ms. Bedford that Doreen Klein of Harris Beach, PLLC would be "conducting the investigation surrounding the events concerning the September 29, 2021 executive session." (*Id.* ¶¶ 79-80.) On November 16, 2021, Mr. Johnson reviewed the memorandum drafted by outside counsel summarizing the investigation and its findings. (*Id.* ¶¶ 97-100.)

**Second Relevant Comp Time Request from Ms. Lockett**

On October 21, 2021, Mr. Johnson notified Ms. Lockett that her comp time request for September again "contained hours that were inconsistent with what [he] indicated [he] would approve upon [her] hire." (*Id.* ¶¶ 81-82.) Later that same day, Ms. Lockett's counsel contacted Mr. Johnson and stated that she represented Ms. Lockett "in connection with her claims of pregnancy discrimination against the City of Mount Vernon, New York." (*Id.* ¶ 83.) This was the first time that Ms. Lockett made Mr. Johnson or any other supervisor at the City aware of any allegation of discrimination. (*Id.* ¶ 84.) Ms. Lockett's counsel requested that communication regarding Ms. Lockett's comp time go through her office, and Mr. Johnson agreed and advised that the City's employment counsel would handle the issue on their end. (*Id.* ¶¶ 85-86.) On November 1, 2021, Ms. Lockett submitted her comp time request for October to Mr. Johnson. (*Id.* ¶ 88.) Mr. Johnson instructed Ms. Lockett to forward the request to her attorney, and again advised that the City's employment counsel would process the request. (*Id.* ¶ 89.) Ms. Lockett and Mr. Johnson engaged in back and forth regarding who Ms. Lockett should submit her comp time request to in light of her representation by counsel. (*Id.* ¶¶ 89-94; Pl. 56.1 Opp. ¶¶ 89-94.)

**Ms. Bedford's Termination**

On October 29, 2021, Mr. Johnson e-mailed Ms. Bedford to inquire about her license status, as he knew she had initially failed the bar exam and had to retake it. (Def. 56.1 ¶¶ 101-02.) On November 17, 2021, Ms. Bedford informed Mr. Johnson that she had failed the bar exam again, and inquired about additional work assignments, as her regular duties had been given to another employee. (*Id.* ¶ 104.) Mr. Johnson responded that these duties had been removed after the executive session incident, and expressed concern over the quality of Ms. Bedford's work and her failure to complete assignments. (*Id.* ¶ 105.)

On November 19, 2021, Mr. Johnson terminated Ms. Bedford's employment due to her failure to obtain her law license, her poor work performance, and because he lost trust in her and felt she had been dishonest with respect to the September 29, 2021 Council meeting. (*Id.* ¶ 106.)

**Bronxville Field Club Appeal**

In early 2021, Ms. Lockett was assigned to prepare an appeal brief in the Bronxville Field Club matter ("BFC") in conjunction with an outside attorney, Brad Schwartz. (*Id.* ¶¶ 108-09.) Several City residents who were retired attorneys had an interest in the appeal, and met with Ms. Lockett and Mr. Johnson several times during 2021. (*Id.* ¶¶ 110, 112.) The residents also prepared a draft brief to assist the City attorneys in their preparation. (*Id.* ¶ 110.) Ms. Lockett did not begin drafting the appeal brief until the residents sent her their brief in late September 2021. (*Id.* ¶ 115.) The Parties dispute the extent to which Ms. Lockett was to rely on the draft brief to write her own. (*Id.* ¶ 111; Pl. 56.1 Opp. ¶ 111.) According to Mr. Johnson, on October 22, 2021, Mr. Schwartz informed him that "Shanitra is not doing the work on the brief that she's leading you to believe she is doing" and suggested that Mr. Johnson "pull somebody else in," further stating that she was "basically regurgitating the sample that she was given." (*Id.* ¶ 118; Pl. 56.1 Opp. ¶ 118.) Ms. Lockett disputes this account. (*Id.*)

Soon afterwards, Anthony Odorisi, another attorney, was assigned to work on the BFC appeal with Ms. Lockett. (*Id.* ¶ 121.) On November 5, 2021, Ms. Lockett sent Mr. Odorisi an incomplete, working draft of the appeal brief and both subsequently worked together to complete a draft brief. (*Id.* ¶¶ 128-29.) On November 18, 2021, the night before the brief was due to be submitted to the printer, Ms. Lockett sent Mr. Schwartz a copy of the draft appeal for his review. (*Id.* ¶ 130.) Mr. Schwartz believed the brief "didn't really get to the heart of what the appeal was about" and that Ms. Lockett essentially had reorganized the lower court papers. (*Id.* ¶ 131.) Ms.

8

Lockett submitted the brief to the printer on November 19, 2021 with only Mr. Johnson listed on the signature page, and not herself. (*Id.* ¶¶ 134-35.)

On November 21, 2021, Mr. Johnson expressed his concern that Plaintiff had not included her own name, not done enough to keep him in the loop, and had put him in a position where he needed to sign papers he had not read. (*Id.* ¶¶ 135, 138-41.) Ms. Lockett disputes this and claims Mr. Schwartz was expected to handle the final review of the brief. (Pl. 56.1 Opp. ¶ 141.)

**Ms. Lockett's Leave**

On September 30, 2021, Ms. Lockett met with Ms. Francis-Merritt from HR to request parental leave beginning December 6, 2021 and concluding June 3, 2022. (*Id.* ¶¶ 74-76.) She provided a memorandum outlining the requested dates of her leave, and allocated time to various forms of leave or vacation time. (*Id.* ¶¶ 75-76.) Ms. Francis-Merritt requested that she e-mail the memorandum to her and Mr. Johnson, who also needed to approve the leave. (*Id.* ¶ 76.)

In mid-November 2021, Mr. Johnson, Ms. Lockett and Ms. Francis-Merritt exchanged emails regarding Ms. Lockett's FMLA request paperwork, which Mr. Johnson felt needed to be corrected. (*Id.* ¶¶ 143-44.) Ms. Lockett and Mr. Johnson went back and forth on Ms. Lockett's time computation. (*Id.* ¶¶ 145-47.) Ultimately, on November 19, 2021, Mr. Johnson approved Ms. Lockett's request for leave in full. (*Id.* ¶ 148.) Mr. Johnson arranged for a former Law Department attorney, who had previously fulfilled Ms. Lockett's duties, to cover for Ms. Lockett during her leave. (*Id.* ¶ 149.)

On December 3, 2021, Ms. Lockett started her maternity leave. (*Id.* ¶ 151.) When she left, she completely cleaned out her office of any personal possessions. (*Id.* ¶ 152.) Mr. Johnson and other employees believed she did not intend to return from her leave, but thought that Ms. Lockett understood her working relationship with Mr. Johnson had deteriorated since the September 29,

2021 incident, and that she would take the opportunity for a graceful exit. (*Id.* ¶ 153.) Ms. Lockett, however, never explicitly told the City that she would not return following her leave. (Pl. 56.1 Opp. ¶ 153.)

**Plaintiff's Suspension and Termination**

Once Ms. Lockett notified the City, through her counsel, that she intended to return from her leave, Mr. Johnson consulted with his staff and the Mayor about whether the Law Department should continue to employ her. (Def. 56.1 ¶¶ 155-56.) On May 26, 2022, Ms. Lockett was told by her counsel that she would be suspended without pay for 30 days, effective June 6, 2022. (*Id.* ¶ 157.) On July 6, 2022, Mr. Johnson terminated Ms. Lockett purportedly because he no longer trusted her, particularly in light of her behavior regarding the executive session incident and her work on the BFC appeal, but Ms. Lockett disputes these reasons as pretextual. (*Id.* ¶ 163.)

## PROCEDURAL HISTORY

On June 8, 2022, Plaintiff filed her EEOC complaint against the City. (*Id.* ¶ 165.) The EEOC issued a "right to sue" letter on August 17, 2023. (*Id.*) On October 17, 2023, Plaintiff filed the Complaint in this action. (ECF No. 1.)

Following discovery, the City moved for summary judgment pursuant to Rule 56. (ECF No. 44.) The City filed a memorandum of law ("Def Mem. of L.", ECF No. 44) and a 56.1 Statement, Plaintiff filed an opposition ("Pl. Opp.", ECF No. 48) and a Counterstatement of Undisputed Material Facts ("Pl. 56.1 Opp.", ECF No. 47), and the City filed a Reply in further support of its motion for summary judgment ("Def. Reply", ECF No. 49).

**LEGAL STANDARDS**

**A. Summary Judgment Under Rule 56**

Under Federal Rule of Civil Procedure 56(a), summary judgment must be granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law," and a dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). The movant bears the initial burden of demonstrating the absence of any genuine issue of material fact, and the Court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Vt. Teddy Bear Co., Inc. v. 1–800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). Once that burden is met, the nonmoving party must do more than raise "some metaphysical doubt as to the material facts" and instead "must come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (internal quotation marks omitted). The nonmoving party may not rely on "mere speculation or conjecture" to defeat summary judgment. *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986).

Local Civil Rule 56.1 requires the movant to submit a "short and concise statement…of the material facts as to which the moving party contends there is no genuine issue to be tried" and each fact is deemed admitted unless properly controverted by a correspondingly numbered response supported by admissible evidence. Local Civ. R. 56.1(a)–(d). Nonetheless, a reviewing court "may not rely solely on the statement of undisputed facts[,] ... [i]t must be satisfied that the citation to evidence in the record supports the assertion." *Vt. Teddy Bear Co.*, 373 F.3d at

11

244 (citing *Giannullo v. City. of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003)). In deciding a motion for summary judgment, the Court must determine not whether the evidence favors one side over the other, but whether a reasonable jury could return a verdict for the nonmoving party. *Simpson v. City of N.Y.*, 793 F.3d 259, 265 (2d Cir. 2015). Credibility assessments and the resolution of conflicting evidence are matters reserved for the jury and are not appropriate at the summary judgment stage. *Id.*

## DISCUSSION

### I.      Hostile Work Environment and Discrimination Claims Under the NYSHRL

Plaintiff alleges claims of hostile work environment and discrimination under the NYSHRL. The Court will address each claim in turn.

#### A.  Hostile Work Environment

"Until 2019, hostile work environment claims under the NYSHRL were governed by the same standard as federal law claims brought under Title VII." *Wheeler v. Praxair Surface Techs., Inc.*, 694 F. Supp. 3d 432, 451 (S.D.N.Y. 2023) (citing *Summa v. Hofstra Univ.*, 708 F.3d 115, 123–24 (2d Cir. 2013)). "To prevail on a NYSHRL hostile work environment claim, a plaintiff was therefore required to establish '(1) that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and (2) that a specific basis exist[ed] for imputing the objectionable conduct to the employer.'" *Id.* (quoting *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002)).

Effective October 11, 2019, however, amendments to the NYSHRL broadened the statute's reach, and the NYSHRL now requires a plaintiff to establish that he or she was subjected to "inferior terms, conditions or privileges of employment because of the individual's membership in one or more ... protected categories." N.Y. Exec. Law. § 296(1)(h); *see Mondelo v. Quinn,*

12

*Emanuel, Urquhart & Sullivan, LLP*, No. 21 Civ. 02512 (CM), 2022 WL 524551, at \*9 (S.D.N.Y. Feb. 22, 2022). "This more lenient standard brings state law closer to the standard to establish a hostile work environment claim under the New York City Human Rights Law ('NYCHRL'), under which a plaintiff need only show that he was treated 'less well than other employees' because of their protected class. *Wheeler, 694 F. Supp. at 451 (citing Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 872 N.Y.S.2d 27, 39 (1st Dep't 2009); *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013)).

While Courts agree that the amendment removed the "severe or pervasive" requirement for a hostile work environment claim, courts have "not definitely resolved whether the effect of the 2019 amendment is to make the NYSHRL's standard *identical* to that of NYCHRL—or merely closer to it." *Yost v. Everyrealm. Inc.*, 657 F. Supp. 3d 563, 578 (S.D.N.Y. 2023). *Compare Arazi v. Cohen Bros. Realty Corp.*, No. 20 Civ. 8837 (GHW), 2022 WL 912940, at \*16 (S.D.N.Y. Mar. 28, 2022) ("After that amendment, the standard for NYSHRL aligns with the NYCHRL standard for claims that accrued on or after October 11, 2019."), *with Wellner v. Montefiore Med. Ctr.*, No. 17 Civ. 3479 (KPF), 2019 WL 4081898, at \*5 n.4 (S.D.N.Y. Aug. 29, 2019) (amendment brings NYSHRL "closer to" NYCHRL standard). Nonetheless, "because the NYCHRL supplies the—or tied with the NYSHRL for the—most lenient applicable liability standard," this Court will treat the amended NYSHRL as tracking the NYCHRL. *Yost*, 657 F. Supp. 3d at 578.

Pursuant to the NYSHRL, "petty slights or trivial inconveniences" are not actionable. N.Y. Exec. Law. § 296(1)(h) ("It shall be an affirmative defense…that the harassing conduct does not rise above the level of what a reasonable victim of discrimination with the same protected characteristic or characteristics would consider petty slights or trivial inconveniences."); *see also Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 80, 872 N.Y.S.2d 27, 41 (2009).

13

Here, the incidents Plaintiff alleges in her Complaint are insufficient to support a hostile work environment claim. A review of the Complaint indicates that Plaintiff relies on the following allegations to substantiate that claim:

- Mr. Johnson stated that Plaintiff's pregnancy discrimination suit was "baffling, disappointing, and stunning" in an email reply to Plaintiff (Compl. ¶ 2);

- Mr. Johnson complained that coverage for Plaintiff's maternity leave would cost the City $7,500 per month (*Id.* ¶ 30);

- Mr. Johnson asked her how much time she intended to take off for her maternity leave (*Id.* ¶¶ 31-32);

- Mr. Johnson initiated an investigation into Plaintiff's unauthorized presence via zoom in the September 29 City Council meeting after she had been asked to leave for the executive session and questioned Plaintiff about Ms. Bedford's participation in the same (*Id.* ¶ 58-61);

- Mr. Johnson did not attend Plaintiff's birthday party at the office (*Id.* ¶ 63);

- Mr. Johnson did not immediately approve Plaintiff's comp time requests or FMLA leave request (*Id.* ¶¶ 69 n.2, 51-52, 71-74); and

- Mr. Johnson critiqued her work product for the BFC appeal (*Id.* ¶ 82).

The foregoing allegations do not rise above the level of "petty slights or trivial inconveniences." Although the record reflects that the relationship between Plaintiff and her supervisor, Mr. Johnson, began to deteriorate following Plaintiff's announcement of her pregnancy—particularly after the September 29 City Council meeting—the alleged conduct amounts to legitimate supervision and reasonable inquiries into the details and logistics of Plaintiff's anticipated time off. To the extent Mr. Johnson's tone may at times have been insensitive or unfriendly, such

conduct is insufficient to establish a hostile work environment. "Excessive criticism and rudeness do not constitute a hostile work environment." *Ramirez v. Temin & Co., Inc.*, No. 20 CIV. 6258 (ER), 2021 WL 4392303, at *8 (S.D.N.Y. Sept. 24, 2021). The NYSHRL requires more. *See, e.g.*, *Jacobs v. Hudson Valley Fam. Physicians, PLLC*, 725 F. Supp. 3d 235, 244 (N.D.N.Y. 2024) (finding a hostile work environment where a male co-owner touched intimate parts of a female employee's body and continued to harass her); *Wheeler v. Praxair Surface Techs., Inc.*, 694 F. Supp. 3d 432, 454 (S.D.N.Y. 2023) (finding a hostile work environment under the amended NYSHRL where a Black employee was subjected to persistent derogatory comments by multiple personnel, including managers, including statements that Black people "should feel lucky to have any job at all," that they are "lazy," and a comparison of the employee to a bank robber).

Further, Plaintiff fails to show that the alleged conduct occurred "because of" her sex or pregnancy. In her opposition, Plaintiff argues that she can establish causation based on: (1) Mr. Johnson's alleged "drastic change in demeanor and conduct" toward Lockett following her pregnancy announcement, which she contends gives rise to an inference of discrimination; (2) Mr. Johnson's purportedly similar treatment of Bedford; and (3) Mr. Johnson's alleged refusal to discipline Mr. Odorisi for his role in the BFC appeal. (Pl. Opp. at 16–18.) These arguments are unavailing.

First, although much of the conduct on which Plaintiff relies occurred after her July 21, 2021 pregnancy announcement, it also post-dates the September 29, 2021 City Council meeting and, as discussed *supra*, does not rise above the level of "petty slights or trivial inconveniences." The only alleged conduct occurring in the interim period is Mr. Johnson's July 29, 2021 letter to the City Council recommending a restructuring of the Law Department. (Compl. ¶ 29; Pl. Ex. P.) That letter, however, makes clear that the proposal was driven by the need to address the City's

debt and reduce costs associated with outsourcing legal work to outside counsel. (Pl. Ex. P.) The restructuring was department-wide and would have affected all five Assistant Corporation Counsels—not Plaintiff specifically.

Second, Mr. Johnson's treatment of Ms. Bedford does not support an inference of discrimination. Like Plaintiff, Ms. Bedford was pregnant, but like Plaintiff, she was also investigated for listening to an executive session meeting she had been instructed to leave. (Def. 56.1 ¶¶ 78–80, 98.) No other employees were treated similarly because no other employees were implicated in that conduct. In addition, Ms. Bedford had documented performance issues, including a repeated failure to obtain a required law license. (*Id.* ¶¶ 26–28.) The record reflects broader dissatisfaction with her work by multiple members of the Law Department, including Mr. Johnson, Ms. Gears, Assistant Counsel Johan Powell, and the Mayor. (Def. Ex. 1 ¶ 25; Def. Ex. 3 ¶ 48; Def. Ex. 4 at 65–66; Def. Ex. 8 at 40–42; Def. Ex. 9 ¶¶ 11–12; Def. Ex. 10 at 86–90.) For example, on August 17, 2021, Mr. Johnson emailed Ms. Bedford to reiterate concerns regarding her performance that he had previously raised. (Def. Ex. 13.)

Lastly, it is unsurprising that Ms. Lockett bore the brunt of Mr. Johnson's dissatisfaction with the brief for the BFC appeal. Ms. Lockett, not Mr. Odorisi, was the attorney who had worked on the appeal since its inception and attended meetings with stakeholders regarding the arguments to be made. (Def. 56.1 ¶¶ 108, 110.) Although Ms. Lockett was assigned the BFC appeal brief in January 2021, she did not begin working on it until approximately eight months later, in September 2021, when she received a draft brief from stakeholders. (*Id.* ¶¶ 114–15.) Moreover, while Ms. Lockett was tasked with preparing the brief in conjunction with outside counsel, Mr. Schwartz testified that Mr. Johnson "wanted [Ms. Lockett] to take the lead in drafting the papers" and that outside counsel "would be there, as needed, to answer any questions or help out." (Def. Ex. 34 at

16

17–20.) By contrast, Mr. Odorisi was not involved in the BFC appeal brief until late October 2021, when he was brought in due to Ms. Lockett's impending maternity leave, which was going to prevent her from working on the reply brief. (Def. 56.1 ¶ 121.) Thus, the timing and scope of Mr. Odorisi's involvement explain why Mr. Johnson would have assessed his performance differently from Ms. Lockett's. In this context, differential treatment reflects differing roles and responsibilities—not discriminatory animus.

Accordingly, Plaintiff has failed to establish a hostile work environment claim under the NYSHRL and summary judgment is granted on this claim.

### B. Discrimination

Discrimination claims under the NYSHRL are analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Schneidermesser v. NYU Grossman Sch. of Med.*, No. 21 Civ. 7179 (DEH), 2024 WL 4135701, at *5 (S.D.N.Y. Sept. 10, 2024), *reconsideration denied*, No. 21 Civ. 7179 (DEH), 2025 WL 2732877 (S.D.N.Y. Sept. 25, 2025) ("[P]ost-amendment NYSHRL employment discrimination claims…are still analyzed under the familiar *McDonnell Douglas* framework, and thus also require a showing of but-for causation."). Under this framework, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination; if she does, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the challenged action. If the defendant meets that burden, the plaintiff must then show that the proffered reason was a pretext for discrimination. *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008).

To establish a *prima facie* case under a disparate treatment theory, a plaintiff must show that: (i) she is a member of a protected class; (ii) she was qualified for her position; (iii) she suffered an adverse employment action; and (iv) the circumstances give rise to an inference of

discrimination. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015); *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010). This burden is "minimal." *Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 75 (2d Cir. 2016). The *prima facie* showing does not require direct evidence of discriminatory intent; rather, it creates "a temporary presumption of discrimination motivation" that shifts the burden of production to the employer. *Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015). The employer's burden at this stage "is not to prove nondiscrimination," but to "introduce evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action." *Albuja v. NBC Universal*, 851 F. Supp. 2d 599, 610 (S.D.N.Y. 2012) (internal quotations omitted). If the employer articulates legitimate, nondiscriminatory reasons for the adverse action, the presumption of discrimination drops out, and the burden shifts back to the plaintiff to show that the proffered explanation is pretextual. *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 469 (2d Cir. 2001). At this final stage, the plaintiff must adduce evidence sufficient to permit a rational factfinder to conclude that the employer's decision was more likely than not motivated by discrimination. *Sullivan v. N.Y.C. Dep't of Investigation*, 163 F. Supp. 3d 89, 99 (S.D.N.Y. 2016) (quoting *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014)).

Here, the Parties agree that Plaintiff establishes the first three prongs of a *prima facie* case of discrimination, but disagree on whether the circumstances give rise to an inference of discrimination. The City reiterates its argument against Plaintiff's hostile work environment claim and contends that Plaintiff fails to establish a *prima facie* case of discrimination because she has failed to show that the City's treatment of Plaintiff was "because of" sex or pregnancy. (Def. Mem. of L. at 21.) The Court agrees. As Plaintiff notes, there "are not separate standards" for hostile work environment and disparate treatment claims. *Moore v. Hadestown Broadway Ltd. Liab. Co.*,

18

722 F. Supp. 3d 229, 245–46 (S.D.N.Y. 2024) (quoting *Johnson v. Strive E. Harlem Emp. Grp.*, 990 F. Supp. 2d 435, 445 (S.D.N.Y. 2014)); Pl. Opp. at 15-16). Instead, "the former is subsumed within the latter." *Id.* (quoting *Rothbein v. City of N.Y.*, 2019 WL 977878 at *9 n.12 (S.D.N.Y. Feb. 28, 2019)). Thus, for the reasons stated above regarding Plaintiff's hostile work environment claim, the Court similarly finds Plaintiff has failed to establish a *prima facie* case of discrimination.

Because Plaintiff has failed to establish a *prima facie* case of discrimination, the burden has not shifted to the City to articulate its actions were taken for legitimate, nondiscriminatory reasons, and the Court need not delve into further analysis of the *McDonnell Douglas* framework. *See Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 493 (2d Cir. 2010) ("[N]o amount of evidence permits a plaintiff to overcome a failure to make out a *prima facie* case."); *Wellington v. Spencer-Edwards*, No. 16 Civ. 6238 (AT), 2019 WL 2764078, at *3 (S.D.N.Y. July 1, 2019) ("If the plaintiff fails to establish any element of [her] *prima facie* case, summary judgment is appropriate.") (quoting *Crews v. Trs. of Columbia Univ.*, 452 F. Supp. 2d 504, 522 (S.D.N.Y. 2006)) (alteration in original).

Accordingly, summary judgment is granted on Plaintiff's discrimination claim under the NYSHRL.

## II.   Retaliation Claims Under the NYSHRL and FMLA

Plaintiff alleges claims of retaliation under the NYSHRL and the FMLA. The Court will address each claim in turn.

### A.   Retaliation Under the NYSHRL

The NYSHRL makes it unlawful for an employer to retaliate or discriminate against an employee because she has "opposed any practices forbidden under this article" or because she has "filed a complaint, testified or assisted in any proceeding under this article." N.Y. Exec. Law ¶

296(7). The *McDonnell Douglas* burden-shifting framework applies to retaliation claims under the NYSHRL. *See Summa*, 708 F.3d at 126. To make a *prima facie* showing of retaliation, a plaintiff must establish "(1) that she participated in an activity protected by [NYSHRL], (2) that her participation was known to her employer, (3) that her employer thereafter subjected her to a materially adverse employment action, and (4) that there was a causal connection between the protected activity and the adverse employment action." *Wheeler*, 694 F. Supp. 3d at 462 (quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010)).

The Parties agree that Ms. Lockett establishes the first three prongs of her *prima facie* case of retaliation; therefore, Ms. Lockett need only establish the fourth prong. "With respect to causation, a plaintiff must prove 'that "but for" the [the protected activity], the adverse action would not have been taken.'" *Tafolla v. Heilig*, 80 F.4th 111, 125 (2d Cir. 2023) (quoting *Natofsky v. City of New York*, 921 F.3d 337, 347 (2d Cir. 2019); *see also Livingston v. City of New York*, 563 F. Supp. 3d 201, 249 (S.D.N.Y. 2021). "Proof of causation can be established either '(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence . . . or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.'" *Tafolla*, 80 F.4th at 125 (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)). "Mere temporal proximity between a protected activity and adverse employment action is sufficient to create an inference of retaliation for purposes of proving a *prima facie* case." *Trivedi v. N.Y.S. Unified Ct. Sys. Off. of Ct. Admin.*, 818 F. Supp. 2d 712, 736 (S.D.N.Y. 2011); *see also Feingold v. N.Y.*, 366 F.3d 138, 156 (2d Cir. 2004).

Plaintiff argues that Ms. Lockett has established retaliation because: (1) Mr. Johnson testified that he fired Ms. Lockett in part because of her pregnancy discrimination complaint; (2) shortly after receiving the complaint, Mr. Johnson complained about "garbage lawsuits" at a staff

20

meeting, stated that "no one is entitled to a job," and generally "escalated his barrage of bizarre criticisms"; and (3) Mr. Johnson terminated Ms. Lockett one month after she filed a complaint with the EEOC. (Pl. Opp. at 18-19.) The Court will address each of these separately.

First, the record demonstrates that Mr. Johnson's comments regarding "garbage lawsuits" and that "no one is entitled to a job" were unrelated to Plaintiff's pregnancy or discrimination suit. Ms. Lockett herself testified that these statements were made during a meeting concerning the Law Department's restructuring and that the reference to "garbage lawsuits" could have been directed at lawsuits "unrelated to pregnancy discrimination." (Def. Ex. 47.) The broader context confirms as much: Mr. Johnson explained that, as part of the restructuring, he "needed to hire more litigators" because he was encountering "garbage lawsuits on [his] desk" and "wanted to rely less on outside counsel." (Compl. ¶ 70.) Against this backdrop, Ms. Lockett's subjective interpretation of these remarks is insufficient to impute discriminatory conduct to Mr. Johnson. Further, the "barrage of criticisms" to which Plaintiff points consists of Mr. Johnson's comments and inquiries regarding Ms. Lockett's comp time requests and her performance on the BFC appeal. As discussed *supra*, these matters fall squarely within the scope of Mr. Johnson's supervisory responsibilities. Moreover, the record reflects that these communications—and the resulting delays in approving Ms. Lockett's comp time requests—were part of an ongoing back-and-forth between Ms. Lockett and Mr. Johnson regarding the proper procedure for submitting such requests in light of her representation by counsel. *See* Def. Ex. 28 (email from Ms. Lockett's counsel, dated October 21, 2021, informing Mr. Johnson that Ms. Lockett had retained counsel and requesting that all communications "concerning the pending investigation regarding the September 29, 2021 committee and/or the processing of Ms. Lockett's earned 'comp' . . . should come through our

21

office."). The fact that these exchanges occurred after Ms. Lockett's pregnancy announcement does not transform them into evidence of discriminatory animus.

Next, Plaintiff contends that Mr. Johnson testified he terminated Ms. Lockett, at least in part, because of her pregnancy discrimination complaint. (Pl. Opp. at 18–19.) While filing such a complaint is undisputedly protected activity, Plaintiff must still establish that, "but for" that activity, she would not have been terminated. *See Tafolla v. Heilig*, 80 F.4th at 125. She cannot do so here. The record reflects that Mr. Johnson consistently articulated a non-retaliatory basis for the termination—namely, a loss of trust stemming from a series of workplace incidents. During his deposition, Mr. Johnson testified that Ms. Lockett was terminated because he "didn't trust her anymore." (Def. Ex. 4, 12:23–13:2.) Although he acknowledged that his belief that Ms. Lockett brought bad-faith discrimination claims was "one of the ways" she lost his trust (Pl. Ex. F, 250:17–251:10), he also identified independent, non-protected grounds for his distrust, including Ms. Lockett's handling of the BFC appeal and the incident surrounding the September 29 City Council meeting. (Def. Ex. 4, 65:19–76:17.) His declaration is consistent, citing that he terminated Ms. Lockett's employment with the City because "[he] could no longer trust her after [a] string of concerning incidents…including her behavior with respect to comp time, the September 29, 2021 Council meeting, and the BFC appeal." (Def. Ex. 3 ¶ 72.) (Def. Ex. 3 ¶ 72.) Critically, the timeline further defeats any inference of but-for causation. It is undisputed that Mr. Johnson first learned of Ms. Lockett's complaint only after her counsel contacted him. (Def. 56.1 ¶¶ 83–84.) By that point, he had already reprimanded Ms. Lockett for requesting "quid pro quo" comp time and informed her that the City had retained outside counsel to investigate her conduct during the September 29 Council meeting.[3] (*Id.* ¶¶ 32–33, 78–82.) Thus, even setting aside the protected

---

[3] The Court notes that outside counsel provided the results of their investigation into the September 29 City Council meeting. (Def. Ex. 31.) The Summary of Findings does not conclusively note that Ms. Lockett knew of the restricted

22

activity, the undisputed record demonstrates that Mr. Johnson had already developed—and begun acting upon—concerns regarding Ms. Lockett's conduct. On this record, no reasonable jury could conclude that, but for Ms. Lockett's complaint, she would have remained employed.

Lastly, Plaintiff contends there is a causal connection between her pregnancy discrimination complaint and her termination because Mr. Johnson terminated her one month after she filed a complaint with the EEOC. (Pl. Opp. at 19.) While temporal proximity can suffice to establish a *prima facie* case of retaliation, it is not sufficient if the adverse action was based on conduct that precedes the protected activity. *See Dotson v. City of Syracuse*, No. 5:04-CV-1388 NAMGJD, 2009 WL 2176127 at *17 (N.D.N.Y. July 21, 2009), *aff'd*, 549 F. App'x 6 (2d Cir. 2013) ("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise."); *Abbondanzo v. Health Mgmt. Sys.*, Inc., No. 00 CIV. 4353 (LMM), 2001 WL 1297808 at *8 (S.D.N.Y. Oct. 25, 2001), *aff'd*, 36 F. App'x 3 (2d Cir. 2002) ("Criticisms that precede the protected activity are relevant to finding that there was no causal nexus."). Here, it is undisputed that Ms. Lockett filed the EEOC complaint against the City on June 8, 2022. (Def.

---

nature of the executive session and, in fact, notes that the analysis of Ms. Lockett's account is more "circumstantial" and that access to Ms. Lockett's text messages would be helpful for a more definitive determination. (*Id.* at 7-8.) The Summary of Findings, however, appears to make certain conclusions of which the Court has reservations (i.e., finding, with no real support, that it was implausible that Ms. Bedford would not have advised Ms. Lockett of the restricted nature of the executive session simply because Ms. Bedford expressed in her interview that she spent approximately 20 minutes daily talking to Ms. Lockett in her office and the two were friendly (*Id.* at 7.)) Nevertheless, the Court need not address outside counsel's Summary of Findings nor assess the accuracy of the statements therein because it is immaterial to Ms. Lockett's claims of retaliation. Ultimately, whether Ms. Lockett knew she was expected to log off the meeting—or whether Mr. Johnson was mistaken in his belief that she did but chose to remain on—is immaterial because what matters is what *motivated* Mr. Johnson to terminate her. *See Schneidermesser*, 2024 WL 4135701, at *6, *reconsideration denied*, 2025 WL 2732877 ("In a discrimination case," courts "are decidedly not interested in the truth of the allegations against [the] plaintiff," as "the factual validity of the underlying imputation against the employee is not at issue.") (quoting *McPherson v. N.Y.C. Dep't. of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006)); *Id.* ("Where a plaintiff has been terminated for misconduct, the question is not whether the employer reached a correct conclusion in attributing fault [to the plaintiff]…,but whether the employer made a good-faith business determination.") (quoting *Kolesnikow v. Hudson Valley Hosp. Ctr.*, 622 F. Supp. 2d 98, 111 (S.D.N.Y. 2009).

56.1 Opp. ¶ 165.) As discussed *supra*, by then Mr. Johnson had long raised his concerns regarding Ms. Lockett's comp time requests and behavior during the September 29 City Council meeting.

Because Plaintiff has failed to establish a causal connection between her discrimination complaint and her termination, she has failed to establish a *prima facie* case of retaliation under the NYSHRL and the Court need not delve into further analysis of the *McDonnell Douglas* framework.

Accordingly, summary judgment is granted on Plaintiff's retaliation claim under the NYSHRL.

### B. Retaliation Under the FMLA

Under the FMLA, it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1). "In order to make out a *prima facie* case, he must establish that: (1) he exercised rights protected under the FMLA; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004). FMLA retaliation claims are also governed by the *McDonnell Douglas* framework. *See Roberts v. Health Ass'n*, 308 F. App'x 568, 570 (2d Cir. 2009).

Here, Ms. Lockett testified that the first time she requested FMLA leave was around the end of September, and the record reflects that she met with HR to request leave on September 30, 2021. (Compl. ¶ 50; Def. 56.1 ¶ 74-77.) It is also undisputed that Ms. Lockett informed Mr. Johnson that she was pregnant on or about July 21, 2021 and that, critically, she did not request leave at that time. (Def. 56.1 ¶¶ 30-31.) However, as the City points out, courts in the Second Circuit have routinely used the date a plaintiff requested leave or was approved for leave—not the

24

date she informed of her pregnancy—as a potential starting point for determining temporal proximity. *See Barbuto v. Syracuse Univ.*, No. 5:23-CV-245, 2024 WL 3519684, at \*6 (N.D.N.Y. July 24, 2024), *reconsideration denied*, No. 5:23-CV-245, 2024 WL 4135716 (N.D.N.Y. Sept. 10, 2024) ("For the purpose of determining closeness in time, '[c]ourts routinely use the date a plaintiff requested FMLA leave as a potential starting date to determine temporal proximity.'"); *Albertin v. Nathan Littauer Hosp. & Nursing Home*, 537 F. Supp. 3d 243, 269 (N.D.N.Y. 2021) ("Courts routinely use the date a plaintiff requested FMLA leave as a potential starting date to determine temporal proximity."). As discussed *supra*, by the time Ms. Lockett requested FMLA leave on September 30, 2021, Mr. Johnson had raised concerns about her comp time requests and her behavior at the September 29 City Council meeting. Thus, as with her NYSHRL retaliation claim, because Plaintiff has failed to establish a causal connection between her FMLA leave and her termination, she has failed to establish a *prima facie* case of retaliation under the FMLA and the Court need not delve into further analysis of the *McDonnell Douglas* framework.[4]

Accordingly, summary judgment is granted on Plaintiff's retaliation claim under the FMLA.

---

[4] The Court will nonetheless briefly address Plaintiff's arguments regarding the planned restructuring of the Law Department and the City's alleged failure to investigate her pregnancy discrimination complaints, as Plaintiff raised both as purported evidence of pretext in her opposition. (Pl. Opp. at 21–22.) First, although the Court finds it somewhat curious that Mr. Johnson contemplated restructuring the Law Department upon assuming the role of Corporation Counsel in January 2020 but did not act on those plans until late 2021—by which point the Department was further understaffed by Ms. Bedford's termination and Ms. Lockett's impending maternity leave—any such restructuring is ultimately immaterial as it was unrelated to Ms. Lockett's termination, and it is, in any event, unclear whether the restructuring ever even materialized. Second, Plaintiff's contention that the City failed to investigate her internal complaints of discrimination is likewise unavailing. Plaintiff does not allege that the City failed to adhere to any established policies or procedures in suspending or terminating her employment, rendering this argument irrelevant to the adverse action at issue. Moreover, the record reflects that Ms. Lockett's counsel agreed to submit a written complaint to facilitate an investigation but failed to do so. (Def. Ex. 48.) Thus, any absence of an internal investigation is attributable, at least in part, to Plaintiff's own inaction and does not support an inference of pretext.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED. The Court again notes that it did not address Plaintiff's claims under Title VII because it deemed these claims withdrawn as Plaintiff did not address them in her opposition. *See supra* 1 n.1.

The Clerk of Court is directed to enter judgment in favor of the Defendant and to terminate the motion at ECF No. 44 and this action.

SO ORDERED.

Dated: March 26, 2026
White Plains, New York

_____
Hon. Nelson S. Roman
U.S. District Court Judge, S.D.N.Y.